# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| NEWFIELD EXPLORATION CO., LEE K. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| BOOTHBY, STEVEN W. NANCE, PAMELA | : **SECURITIES EXCHANGE ACT OF** |
| J. GARDNER, EDGAR R. GIESINGER, | : **1934** |
| ROGER B. PLANK, THOMAS G. RICKS, | : |
| JUANITA M. ROMANS, JOHN W. | : **JURY TRIAL DEMANDED** |
| SCHANCK, J. TERRY STRANGE, AND J. | : |
| KENT WELLS, | : |
| | : |
| Defendants. | : |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Newfield Exploration Co. ("Newfield or the "Company") and the members Newfield's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Newfield by Encana Corporation and its affiliates ("Encana").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on December 4, 2018 with the United States Securities & Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Neapolitan Merger Corp. ("Merger Sub"), a wholly owned subsidiary of Encana, will merge with and into Newfield with Newfield surviving the merger as an indirect, wholly-owned subsidiary of Encana (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Newfield common share issued and outstanding will be converted into the right to receive 2.6719 shares of Encana common stock, valuing Newfield at $27.36 per share based on the closing price of Encana common stock on October 31, 2018, which was $10.24 per share (the "Merger Consideration").

3. Newfield and the Board failed to negotiate and obtain a collar provision to be included in the Merger Agreement, which is designed to protect Newfield shareholders from dramatic changes in the buyer's stock price between the announcement of the Proposed Transaction and the time of closing. Encana's stock price on October 31, 2018 was $10.24 and dropped $12.50% the next day after the announcement of the Proposed Transaction. The stock price has been steadily falling ever since and Encana's closing stock price on December 14, 2018 was only $5.81, representing a consideration of only $15.52 per share, a decrease of approximately 30% in deal value.

4. Therefore, the consideration Newfield stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked Newfield's stockholders to support the Proposed

Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, (i) Newfield's and Encana's financial projections, relied upon by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by J.P. Morgan; (iii) the background process leading to the Proposed Transaction; and (iv) Newfield insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Newfield stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

5.  It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

6.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Newfield's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in the State of Delaware and therefore in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Newfield in incorporated in this District.

**PARTIES**

10. Plaintiff is, and has been at all relevant times, the owner of Newfield common stock and has held such stock since prior to the wrongs complained of herein.

11. Individual Defendant Lee K. Boothby ("Boothby") is the Company's Chairman, President and Chief Executive ("CEO"). Boothby has served as a member of the Board since 2009.

12. Individual Defendant Steven W. Nance ("Nance") has served as a member of the Board since 2013 and is the Company's Lead Director.

13. Individual Defendant Pamela J. Gardner ("Gardner") has served as a member of the Board since 2005.

14. Individual Defendant Edgar R. Giesinger ("Giesinger") has served as a member of the Board since 2017.

15. Individual Defendant Roger B. Plank ("Plank") has served as a member of the Board since 2015.

16. Individual Defendant Thomas G. Ricks ("Ricks") has served as a member of the Board since 1992.

17. Individual Defendant Juanita M. Romans ("Romans") has served as a member of the Board since 2005.

18. Individual Defendant John W. Schanck ("Schanck") has served as a member of the Board since 2013.

19. Individual Defendant J. Terry Strange ("Strange") has served as a member of the Board since 2004.

20. Individual Defendant J. Kent Wells ("Wells") has served as a member of the Board since 2015.

21. Defendant Newfield is incorporated in Delaware and maintains its principal offices at 4 Waterway Square Place, Suite 100, The Woodlands, Texas 77380. The Company's common stock trades on the New York Stock Exchange under the symbol "NFX."

22. Non-party Encana is a Canadian company and mains its principal offices at Suite 4400, 500 Centre Street S.E., P.O. Box 2850, Calgary, Alberta, Canada T2P 2S5. Encana's common stock trades on the New York Stock Exchange under the symbol "ECA."

23. Non-party Neapolitan Merger Corp. is a Delaware corporation and is an indirect wholly-owned subsidiary of Encana, formed solely for the purposes of effectuating the Proposed Transaction.

24. The defendants identified in paragraphs 11-20 are collectively referred to as the "Individual Defendants" or the "Board."

25. The defendants identified in paragraphs 11-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction Undervalues Newfield**

26.     Newfield is an independent energy company that engages in the exploration, development, and production of crude oil, natural gas, and natural gas liquids in the United States. The Company has operations principally in the Anadarko and Arkoma basins of Oklahoma, the Williston Basin of North Dakota, and the Uinta Basin of Utah. It also holds oil producing assets offshore China. The company was founded in 1988 and is headquartered in The Woodlands, Texas.

27.     On November 1, 2018, the Company and Encana jointly announced the Proposed Transaction:

> MIDLAND, Texas--(BUSINESS WIRE)--Aug. 14, 2018-- Encana CALGARY, Alberta, Nov. 01, 2018 (GLOBE NEWSWIRE) -- Encana Corporation (Encana) (TSX, NYSE: ECA) and Newfield Exploration Company (Newfield) (NYSE: NFX) today announced that they have entered into a definitive agreement whereby Encana will acquire all of the outstanding shares of common stock of Newfield in an all-stock transaction valued at approximately $5.5 billion. In addition, Encana will assume $2.2 billion of Newfield net debt. The strategic combination will create a leading multi-basin company and has been unanimously approved by the Boards of Directors of both companies. Subject to receipt of regulatory and shareholder approvals by both companies, the transaction is expected to close in the first quarter of 2019.
>
> * * *
>
> "This strategic combination advances our strategy and is immediately accretive to our five-year plan," said Doug Suttles, Encana President & CEO. "Our track record of consistent execution gives us confidence to accelerate and increase shareholder returns. I am very excited to lead the combined company and want to congratulate the team at Newfield on doing a tremendous job building premium positions in the core-of-the-core in each of their assets, particularly in the world-class, oil-rich, STACK/SCOOP. When combined with our cube development model, expected synergies and relentless focus on efficiency, we

6

are positioned to deliver highly efficient growth and quality returns."

Lee K. Boothby, Newfield Chairman, President and CEO, stated, "This transaction is the best path forward for our company. The combination of the two companies provides our investors with the very attributes that should be differentiated in today's energy sectoroperational scale, proven execution in development of large, liquids-rich onshore resource plays, a peer-leading cost structure and an exceptionally strong balance sheet.

"We strongly believe that the synergies between these two organizations will create a dominant diversified resource player that is positioned to drive future value. The new organization will be capable of efficiently developing high-value growth assets while delivering significant cash to shareholders. Throughout our 30-year history, Newfield has worked to create a strong portfolio of assets managed by some of the best and brightest people in the business. The merger will accelerate the development of these assets and as a result, capture full value for our owners.

\* \* \*

TRANSACTION DETAILS

The transaction has been unanimously approved by the Board of Directors of both Encana and Newfield. Newfield's Board of Directors has recommended that its shareholders vote their shares in favor of the merger and Encana's Board of Directors has also recommended that its shareholders vote to approve the issuance of Encana common shares under the transaction.

Under the terms of the merger agreement, Newfield shareholders will receive 2.6719 Encana common shares for each share of Newfield common stock. Upon completion of the transaction, Encana shareholders will own approximately 63.5 percent of the combined company and Newfield shareholders will own approximately 36.5 percent. Two directors from the Newfield Board of Directors will join the Encana Board upon closing.

The transaction is subject to the terms and conditions set forth in the merger agreement, including holders of two-thirds of Newfield's shares of common stock having voted in favor of the merger, holders of a majority of votes cast by Encana shareholders having voted in favor of the issuance by Encana of its common shares, the waiting period under the U.S. Hart-Scott-Rodino Act

7

>   having expired or been early terminated, the Toronto Stock Exchange and the New York Stock Exchange each having approved the listing of the Encana common shares to be issued in the transaction and other customary conditions.

28.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth.  More specifically, on the same day the Merger Agreement was signed and a day before the announcement of the Proposed Transaction, Newfield announced stellar third quarter results. The Company posted earnings of $1.01 per share for the quarter, beating analyst consensus, up from $0.52 the same quarter one year ago. Total revenues were $711.0 million, up from $439.0 million the same quarter one year ago. The upside is primarily attributed to outstanding performance in the Anadarko Basin, with net production up more than 35% year-over-year and net liquids production up 27% year-over-year. Anadarko Basin net crude oil volumes grew more than 30% compared to the same quarter one year ago. The Company raises mid-point of full-year 018 production expectations and increases Fourth Quarter 2018 capital investments.

29.     Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

30.     Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction without an exchange ratio collar provision, which would have protected the Company's shareholders from Encana's free-fall stock price. The value of the Proposed Transaction dropped 30% from the date of announcement.  It is therefore imperative that Newfield's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Background of the Merger**

31.     In July 2018, the Board met and discussed, among other topics, the Company's strategic direction, and ultimately determined that Boothby should reach out to other similarly situated companies in the industry to gain information for the Board's annual strategic session planned for late October 2018.

32.     Boothby met with seven companies, including Encana. Thereafter, Encana began actively pursuing Newfield for a potential acquisition and the two companies' CEOs met numerous times to discuss.

33.     On October 10, 2018, Encana submitted a proposal to acquire the Company for $1.0 billion in cash and 470,200,000 Encana common shares, representing approximately $35.00 per share implied offer price of Newfield common stock (the "October 10 Offer"). The parties executed a confidentiality agreement on October 16, 2018.

34.     At the same time, Boothby was communicating with Company A and Company B and each potential bidder was interested in discussing further and/or submitting proposals. A third potential interest, Company C, called Boothby to discuss a potential acquisition by Newfield, but for reasons unexplained in the Registration Statement, Boothby deferred the call until after the Board's strategy session in late October.

35.     The stock price for both companies fell following the October 10 Offer, and Encana took the opportunity to drive down the Merger Consideration. Nothing in the Registration Statement indicated the Boothby pointed out to the Encana CEO that Encana's stock price had fallen as well, and that Boothby attempted to protect Newfield shareholders by demanding an exchange ratio collar.

36.     On October 31, 2018, the companies executed the Merger Agreement after receiving a fairness opinion from J.P. Morgan and approval from the Board.

C. **Conflicts of Interests in the Proposed Transaction**

37. The Board along with certain Company's executive officers are conflicted because they have secured unique benefits for themselves from the Proposed Transaction not shared with the public stockholders.

38. Two members of the Newfield's Board will join the board of the newly formed company.

39. It is also assumed that the named executive officers of Newfield will be terminated "without cause," and will receive substantial cash severance payments, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($)[3] | Perquisites/ Benefits ($)[4] | Tax Reimbursement ($)[5] | Other ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Lee K. Boothby | 8,974,258 | 18,401,820 | — | 172,329 | — | — | 27,548,407 |
| Lawrence S. Massaro | 4,100,534 | 9,293,060 | — | 172,329 | — | — | 13,565,923 |
| Gary D. Packer | 4,647,466 | 9,293,060 | — | 191,654 | — | — | 14,132,180 |
| John H. Jasek | 2,148,205 | 4,876,112 | — | 154,436 | — | — | 7,178,753 |
| George T. Dunn[6] | — | 2,140,710 | — | — | — | — | 2,140,710 |

D. **The Materially Incomplete and Misleading Registration Statement**

40. On December 4, 2018, Newfield and Encana jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision

concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

41. With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

42. For the projections prepared by Encana for Newfield, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 84-85. EBITDA and Unlevered Free Cash Flow are non-GAAP measures as contemplated by Regulation G.

43. For the projections prepared by Newfield management for Newfield, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDAX and (2) Operating Cash Flow but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Registration Statement 88. EBITDAX and Operating Cash Flow are non-GAAP measures as contemplated by Regulation G.

44. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly

understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

    45.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

    46.    Thus, to cure the Registration Statement the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

    47.    With respect to J.P. Morgan's *Net Asset Value Analysis* ("NAV") for the purposes of determining an implied equity value per share for Newfield common stock and Encana common shares, the Registration Statement states:

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

> J.P. Morgan calculated the present value, as of September 30, 2018, of unlevered free cash flows that Newfield is expected to generate from September 30, 2018 onward using the Newfield forecasts and assuming (i) NYMEX strip pricing through 2023, with prices held flat thereafter (which is referred to in this section as "String Pricing") and (ii) Wall Street consensus pricing through 2021, with prices held flat thereafter (which is referred to in this section as "Consensus Pricing"), which pricing assumptions were reviewed and authorized by Newfield's management. Newfield's projected asset-level cash flows were discounted to present values using a range of discounted rates from 9.00% to 11.50%, which were chosen by J.P. Morgan based upon an analysis of the weighted average cost of capital of Newfield, and then were adjusted for Newfield's hedges, other corporate and operating expenses, projected general and administrative expenses, projected cash tax savings adjusted for utilization of Newfield's net operating losses, asset retirement obligations, and net debt as of September 30, 2018 to indicate a range of implied net asset values on a per share basis for Newfield, which were divided by the number of fully diluted shares outstanding at Newfield to arrive at the following range of implied net asset values per share of Newfield common stock, based on Strip Pricing and Consensus Pricing. Resulting per share values were in all cases rounded to the nearest $0.25 per share.

Registration Statement at 113-14. Further, in regards to Encana's unlevered free cash flows:

> J.P. Morgan also calculated the present value, as of September 30, 2018, of unlevered free cash flows that Encana is expected to generate from September 30, 2018 onward using the Encana forecasts and assuming (i) Strip Pricing and (ii) Consensus Pricing, which pricing assumptions were reviewed and authorized by Newfield's management. Encana's projected asset-level cash flows were discounted to present values using a range of discount rates from 8.50% to 11.00%, which were chosen by J.P. Morgan based upon an analysis of the weighted average cost of capital of Encana, and then were adjusted for Encana's hedges, minimum volume commitments and other liabilities, projected general and administrative expenses, projected cash tax savings adjusted for utilization of Encana's net operating losses, asset retirement obligations and net debt as of September 30, 2018 to indicate a range of implied net asset values per share of Encana common shares, based on Strip Pricing and Consensus Pricing. Resulting per share values were in all cases rounded to the nearest $0.25 per share.

48. The Registration Statement fails, however, to disclose the Company's and Encana's (i) unlevered free cash flows, (ii) the line items used to calculate each company's unlevered free cash flows, utilized by J.P. Morgan in its NAVs for Newfield and Encana; and (iii) the adjustments of the weighted average cost of capital of each company made by J.P. Morgan, which included: "hedges, minimum volume commitments and other liabilities, projected general and administrative expenses, projected cash tax savings adjusted for utilization of net operating losses, asset retirement obligations, and net debt as of September 30, 2018" utilized by J.P. Morgan in its NAV.

49. The Registration Statement also states that J.P. Morgan reviewed, among other things, "the estimated amount and timing of the cost savings and related expenses and synergies expected to result from the merger (which is referred to for purposes of this section as the "Synergies") to arrive at its fairness opinion. Registration Statement at 108. However, the Registration Statement fails to include the synergies reviewed by J.P. Morgan. This information is also omitted from the discussion of the *Implied Intrinsic Value Creation Analysis*, where Synergies was used to calculate the theoretical value creation for existing Newfield shareholders. Registration Statement at 115.

50. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

53.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

54.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and

disclose such information to stockholders although they could have done so without extraordinary effort.

54. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

56. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Newfield within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Newfield, and participation in and/or awareness of the Company's operations and/or

16

intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Newfield, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Newfield, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

61. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 17, 2018  **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*